# In the United States Court of Federal Claims

No. 05-965 C
(Filed: August 20, 2008)

| | | |
|---|---|---|
| CEBE FARMS, IND., and JOSEPH CEBE, Plaintiffs, v. THE UNITED STATES, Defendant. | * | Fifth Amendment Takings Claim; RCFC 12(c); Judgment on the Pleadings; Exotic Newcastle Disease in Livestock; 7 U.S.C. § 8306 (2000); Motion to Amend; RCFC 15 |

Stuart A. Wilkins, Marlton, New Jersey, for plaintiffs.

Timothy Paul McIlmail, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

Before the court are Defendant's Motion for Judgment Upon the Pleadings ("motion") and Plaintiffs' Cross-Motion to Amend (If Necessary) and Opposition to Defendant's Motion for Judgment Upon the Pleadings ("cross-motion to amend and opposition"). In this case, plaintiffs seek just compensation under the Fifth Amendment to the United States Constitution or, alternatively, damages for breach of contract or violation of a money-mandating regulation "arising from the destruction of uninfected genetically unique and irreplaceable breeder chickens and eggs as part of [the United States Department of Agriculture's ("USDA")] effort to stop the spread of and eradicate Exotic Newcastle Disease (END) following an outbreak in Southern California" in 2002. Compl. ¶ 1. Plaintiffs allege that the USDA failed to adequately compensate them for the destruction of three breeds of colored broiler chickens that are now extinct. Id. ¶ 2. Specifically, plaintiffs assert four causes of action against defendant: (1) breach of contract to pay the appraised value of plaintiffs' chickens and eggs as indemnity; (2) breach of contract to pay per egg and per bird values agreed by the USDA; (3) violation of regulations requiring payment of appraisal as indemnity;[1] and (4) just compensation under the Fifth Amendment. Id. ¶¶ 60-70.

---

[1] Plaintiffs cite 9 C.F.R. §§ 53.3, 53.8 (2003) as money-mandating regulations that require "the payment of an indemnity for the destruction of Cebe's chickens and eggs equal to the value set forth in the official appraisal . . . ." Compl. ¶ 65.

In its motion, filed pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant argues that plaintiffs' first two causes of action "do not allege that plaintiffs contracted with Government representatives with authority to bind the Government," Def.'s Mot. J. Pleadings ("Def.'s Mot.") 5, that plaintiffs' third cause of action is "not subject to judicial review" pursuant to 7 U.S.C. § 8306(d)(2)(C) (2000), id. at 6-7, and that the USDA's determination that plaintiffs' chickens and eggs were diseased–a determination that permitted it to act pursuant to its statutory and regulatory police powers–precludes plaintiffs from pursuing their fourth cause of action for just compensation, id. at 7-9. Consequently, defendant maintains that plaintiffs have failed to state a claim upon which relief may be granted. Id. at 1.

Plaintiffs, however, assert that defendant's motion is wrought with "mischaracterization[s] (or perhaps oversimplification[s]) of the claims made and issues presented by the Complaint." Pls.' Cross-Mot. Amend (If Necessary) & Opp'n Def.'s Mot. ("Pls.' Cross-Mot. & Opp'n") 8. They argue that their claims "are not only properly pled and properly before the Court, . . . they are meritorious." Id. at 9. Therefore, according to plaintiffs, "judicial review is not only appropriate but critical" in this case. Id. at 32. For the reasons set forth below, defendant's motion is granted in part and denied in part, and plaintiffs' cross-motion to amend is granted.

## I. LEGAL STANDARDS

An RCFC 12(c) motion "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings . . . ." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2004) (discussing Fed. R. Civ. P. 12(c)) (footnote omitted). Courts "have routinely construed a motion to dismiss for failure to state a claim filed after the answer as a motion for judgment on the pleadings," and the "legal standard applied to evaluate a motion for judgment on the pleadings is the same as that for a motion to dismiss." Peterson v. United States, 68 Fed. Cl. 773, 776 (2005). Thus, judgment on the pleadings "is appropriate where there are no material facts in dispute and the [movant] is entitled to judgment as a matter of law." N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994). Where the government moves the court for judgment on the pleadings, "each of the well-pled allegations in the complaint[] is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs." Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990); accord Johns-Manville Corp. v. United States, 12 Cl. Ct. 1, 14 (1987) (construing the predecessor rule to RCFC 12(c) and stating that "[f]or purposes of ruling on a motion for judgment on the pleadings, the traditional standard is that a court must assume that all well-pleaded facts in the nonmovant's pleading are true and that all controverted assertions of the movant's pleadings are false"). The court's ruling "is based on the substantive merits of the claims and defenses as alleged in the non-movant's pleadings." J.M. Huber Corp. v. United States, 27 Fed. Cl. 659, 662 (1993).

A motion for judgment on the pleadings is similar to a motion for summary judgment. See 5C Wright & Miller, supra, § 1369 (noting similarities between the two motions). As discussed above, all factual inferences are drawn in favor of the nonmoving party, as is the case with a motion for summary judgment. See id. If matters outside the pleadings are presented to and not excluded by the court, then "the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by RCFC 56."[2] RCFC 12(c).

## II. THE PARTIES' MOTIONS

### A. Plaintiffs' First and Second Causes of Action

In their cross-motion to amend and opposition, plaintiffs state that their complaint "sufficiently places Defendant on notice that it is alleging that its employees had the requisite authority to have bound the government in contract." Pls.' Cross-Mot. & Opp'n 24. Nevertheless, plaintiffs seek to amend their complaint in order to respond to defendant's claim that the complaint lacks an "express allegation that the government witnesses named in the Complaint 'had the express or implied authority to bind the Defendant.'" Id. at 23. Defendant states that it "would not oppose a motion to amend the complaint to include allegations that specifically-identified Government representatives with whom plaintiffs entered into agreements possessed the authority to bind the United States." Def.'s Reply Pl.'s Resp. Def.'s Mot. ("Def.'s Reply") 3. The court finds that justice requires amendment of plaintiffs' complaint, see RCFC 15(a), because an amended complaint would adequately address defendant's challenge. Cf. W & D Ships Deck Works, Inc. v. United States, 39 Fed. Cl. 638, 648 (1997) (stating that "dismissal is appropriate where it is obvious that amendment of the complaint would not rectify its deficiency"). Given that defendant consents to amendment, it will not suffer any prejudice flowing therefrom. Accordingly, the court grants plaintiffs' cross-motion to amend and denies defendant's motion as it relates to plaintiffs' first and second causes of action.

### B. Plaintiffs' Third Cause of Action

Defendant argues that plaintiffs' third cause of action does not state a claim upon which relief can be granted because "the Government's determination of the amount to be paid to plaintiffs is not subject to judicial review." Def.'s Mot. 6. It argues that plaintiffs' contention that they are "suing for 'enforcement' of an appraiser's determination as to what amount the Government should pay to plaintiffs . . . misses the point." Def.'s Reply 4. Specifically,

---

[2] Plaintiffs submitted approximately 180 pages of exhibits with their cross-motion to amend and opposition in an effort to "aid the court in understanding . . . the viability of Plaintiff's [sic] allegations, the inconsistencies in Defendant's defenses, and more importantly the overall facts and importance of this action." Pls.' Cross-Mot. & Opp'n 11. Plaintiffs note, however, that they "do not seek (at least at this time) to convert this Motion on the Pleadings into a summary judgment Motion." Id.

defendant contends that the USDA determined the appropriate amount to compensate plaintiffs for their chickens and eggs, made that determination pursuant to the Animal Health Protection Act, and paid that amount to plaintiffs after the USDA "reject[ed] an alternative determination of an appraiser that it had hired." Id. at 4-5. According to defendant, because the USDA acted pursuant to 7 U.S.C. § 8306(d), any determination made pursuant to that provision is not subject to judicial review.[3] Def.'s Mot. 7; accord Def.'s Reply 5 (stating that by "asking the Court to 'enforce' a determination other than that adopted by the Government pursuant to 7 U.S.C. § 8306(d)," plaintiffs are, in essence, "asking the Court to review the Government's determination"). Since Congress explicitly proscribed judicial review of the USDA's compensation determination, defendant maintains that plaintiffs have failed to state a claim upon which relief can be granted. Def.'s Reply 6; accord id. at 5-6 (distinguishing 7 U.S.C. § 8306(d) from its predecessor statute, which, as the United States Court of Claims noted in Julius Goldman's Egg City v. United States, 556 F.2d 1096, 1099 (Ct. Cl. 1977), contained "no explicit provision . . . precluding further review, or making the administrative determination final, conclusive, or binding").

Plaintiffs claim that defendant's argument is erroneous and emphasize that they "do[] not seek a judicial review [challenging] the government's determination of the fair market value." Pls.' Cross-Mot. & Opp'n 26. But see Compl. ¶ 41 (alleging that plaintiffs did not waive any legal rights to challenge the USDA's determination of the fair market value of the flock and eggs). Instead, plaintiffs assert that defendant hired an independent expert, agreed to be bound by that expert's appraisal, and then allegedly reneged on that agreement. Pls.' Cross-Mot. & Opp'n 26-27 (citing Compl. ¶¶ 27-32, 36-40); see also Compl. ¶ 37 ("[The] USDA refused to honor its commitment and contract to pay the officially appraised value as an indemnity. [The] USDA never gave any reason . . . for its refusal to honor the appraisal . . . ."). They indicate that their complaint "seeks that the Court enforce the official appraiser's . . . determination, noting that same was to become . . . 'the USDA offer.'" Pls.' Cross-Mot. & Opp'n 28. Moreover, as plaintiffs note, courts are "reluctant to confer unreviewable power on administrative agencies," id. at 29 (citing S. Ry. Co. v. Seaboard Allied Milling Corp., 442 U.S. 444 (1979)), and judicial review "is available to consider constitutional claims and defendant's alleged violation of [a] clear statutory mandate or prohibition," id. (citing Staacke v. U.S. Sec'y of Labor, 841 F.2d 278 (9th Cir. 1978)).

With regard to plaintiffs' statutory claim for compensation, 7 U.S.C. § 8306(d)(1) provides that the Secretary of Agriculture ("the Secretary") "shall compensate the owner of any animal, article, facility, or means of conveyance that the Secretary requires to be destroyed under this section." Compensation "shall be based on the fair market value, as determined by the Secretary, of the destroyed animal . . . ." 7 U.S.C. § 8306(d)(2)(A). Pursuant to subsection

---

[3] Subsection (d)(2)(C) provides: "The determination by the Secretary [of Agriculture] of the amount to be paid under this subsection shall be final and not subject to judicial review or review of longer than 60 days by any officer or employee of the Federal Government other than the Secretary or the designee of the Secretary." 7 U.S.C. § 8306(d)(2)(C).

(d)(2)(C), this determination is not subject to review. See supra note 3. The plain language of this statute is controlling and provides the "best indication of Congress's intent." Shoshone Indian Tribe of Wind River Reservation v. United States, 364 F.3d 1339, 1345 (Fed. Cir. 2004); see also Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1320 (Fed. Cir. 2003) (stating that plain and unambiguous statutory language is controlling).

Even though plaintiffs assert that their third cause of action "seeks enforcement (based upon an independent appraisal conducted by Defendant[']s own expert), rather than challenge [of] the government's fair market value determination," Pls.' Cross-Mot. & Opp'n 11, their claim is, nevertheless, a challenge to the USDA's determination, which plaintiffs allege was not made pursuant to an appraisal that defendant was obligated to both honor and follow:

> [T]he amount ultimately paid by Defendant was derived by Defendant after there was already an agreement to pay Plaintiffs a higher amount and derived after Defendant hid the fair market valuation derived by its own independent expert. Defendant['s] payment . . . does not represent the 'fair market value' for the destroyed chicken and eggs . . . .

Id. at 12. Despite their allegations that defendant agreed to be bound by an official appraisal, see Compl. ¶¶ 27-29, plaintiffs cannot overcome the plain language of 7 U.S.C. § 8306(d)(2)(C). Indeed, they have not cited any exception to this pertinent provision. See S. Ry. Co., 442 U.S. at 444 (stating that "[a]though we will not lightly interpret a statute to confer unreviewable power on an administrative agency, we have no choice in this case" because "'there is persuasive reason to believe that [nonreviewability] was the purpose of Congress.'" (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967) (citation omitted) (alteration in original))). Here, the statute is unambiguous, and plaintiffs have not shown that congressional intent is contrary to the plain language of the statute. Consequently, there is no basis to disregard Congress' express prohibition concerning judicial review of the Secretary's compensation determination.

The court cannot rewrite or violate a statute in order to accommodate one particular plaintiff. Judicial review of the Secretary's compensation determination is foreclosed by the plain language of 7 U.S.C. § 8306(d)(2)(C). Consequently, plaintiffs' third cause of action fails to state a claim upon which relief can be granted. Despite this conclusion, plaintiffs' allegations and supporting evidence with respect to valuation and representations made by representatives of the USDA are relevant to their Fifth Amendment takings claim, the viability of which is an independent inquiry. Accordingly, defendant's motion is granted with respect to plaintiffs' third cause of action.

### C. Plaintiffs' Fourth Cause of Action

Finally, defendant argues that judgment should be entered in favor of the government with respect to plaintiffs' fourth cause of action "because the Government determined that plaintiffs' chickens and eggs were diseased; the Government, therefore, does not owe any

compensation pursuant to the Fifth Amendment's Takings Clause." Def.'s Mot. 7. Defendant maintains that because the court's jurisdiction "presumes the validity of the Government action," Def.'s Reply 7 (citing Biddulph v. United States, 74 Fed. Cl. 765, 768 (2006)), plaintiffs must accept as true the USDA's claim that their flock was diseased in order to maintain a constitutional taking. Id. In effect, defendant asserts a nuisance defense: the USDA destroyed plaintiffs' chickens and eggs "pursuant to its statutory and regulatory police power, after determining that they were diseased." Id. at 8; accord id. (arguing that "[d]iseased animals are a 'public nuisance'; their destruction does not require compensation pursuant to the Takings Clause").

Plaintiffs characterize defendant's argument as "most confusing." Pls.' Cross-Mot. & Opp'n 30. Specifically, they state that defendant's motion "seeks to do away with any proofs or evidence whatsoever and requests judgment based on an unsubstantiated defense." Id. Plaintiffs acknowledge that "if the chickens turned out to have been diseased[, then] . . . this claim might be subject to dismissal . . . ." Id. (emphasis added). However, plaintiffs maintain that they should be afforded an opportunity to contest defendant's "quantum leap that what must be proved as evidence can simply be dismissed by allegation." Id. at 30-31.

Plaintiffs allege in their complaint that the "USDA claimed that Cebe's flock was infected, but refused despite repeated requests to provide any proof, e.g.[,] lab tests, to confirm this allegation. Mortality in the Cebe flock was below normal levels for even an uninfected flock . . . . None of Cebe's birds displayed any of the clinical signs of an END infection." Compl. ¶ 24. Plaintiffs also allege that they "consented to the depopulation of the flock and eggs," id. ¶ 42, but do not indicate they did so on the basis of a finding by the USDA that the flock and eggs were diseased. In fact, plaintiffs allege that "[w]hether or not Cebe's birds were infected, [the] USDA did not have to destroy Cebe's eggs to prevent the spread of END. The eggs could have been safely quarantined, cleaned, and hatched in the ordinary course of Cebe's breeding program . . . ." Id. ¶ 45.

The Just Compensation Clause of the Fifth Amendment ("Takings Clause") provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The purpose of this provision is "to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole,'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") recognizes that the Takings Clause "is sufficiently self-executing as to mandate compensation by the Federal Government." Yancey v. United States, 915 F.2d 1534, 1537 n.1 (Fed. Cir. 1990) (citing Wilfong v. United States, 480 F.2d 1326 (Ct. Cl. 1973)).

The Federal Circuit has, on prior occasions, addressed the issue of compensation for the alleged taking of animals. For example, in two instances, it has applied the standards governing regulatory takings claims under Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978). In Yancey, the Federal Circuit affirmed the trial court's determination, based upon the

factors enumerated in Penn Central Transportation Co., that a compensable taking occurred as a result of the government's quarantine over their turkey breeder hens and turkey toms due to an outbreak of lethal Avian Influenza. 915 F.2d at 1536, 1539, 1542. By contrast, in Rose Acre Farms, Inc. v. United States, the Federal Circuit vacated a determination by the trial court that regulations restricting sales of eggs that tested positive for salmonella bacteria effected a per se taking, remanding to the trial court because its determination was not in accordance with Penn Central Transportation Co. 373 F.3d 1177, 1179, 1184 (Fed. Cir. 2004). In this case, plaintiffs present a physical taking of their flock and eggs by the USDA pursuant to a regulation. See Compl. ¶ 68 ("The government took Cebe's property . . . by destroying (depopulating) its chickens and eggs.").

"A determination of whether a taking compensable under the Fifth Amendment has occurred is a question of law based on factual underpinnings." Rose Acre Farms, Inc., 373 F.3d at 1183 (citing Alves v. United States, 133 F.3d 1454, 1456 (Fed. Cir. 1998)). Thus, the "fact-intensive nature of just compensation jurisprudence . . . argues against precipitous grants of summary judgment," Yuba Goldfields, Inc. v. United States, 723 F.2d 884, 887 (Fed. Cir. 1983); accord Moden v. United States, 404 F.3d 1335, 1346 (Fed. Cir. 2005) (recognizing the "fact-intensive nature of takings cases"), or, in this case, judgment on the pleadings, see 5C Wright & Miller, supra, § 1369 (noting similarities between motions for judgment on the pleadings and for summary judgment). With respect to plaintiffs' fourth cause of action, it is clear that the parties dispute whether the flock and eggs were, in fact, diseased. For purposes of this motion, however, the court accepts as true plaintiffs' allegation that the flock and eggs were not diseased. Although defendant is correct that, in takings jurisprudence, a plaintiff must concede the validity of the government action that forms the basis for a takings claim, Fla. Rock Indus., Inc. v. United States, 791 F.2d 893, 898-99 (Fed. Cir. 1986), it does not logically follow that plaintiffs here must concede the correctness of defendant's assertion that the flock was diseased in order to maintain a constitutional takings theory.

Assuming, arguendo, that the USDA believed the flock and eggs to be diseased and made a determination of just compensation on that basis, the compensation provided to plaintiffs would have been inadequate if the flock and eggs were healthy. If, in fact, the flock and eggs were healthy, then the destruction of that property, even though based upon flawed findings, would nevertheless be legal. Under such a scenario, just compensation pursuant to the Fifth Amendment would be required. Defendant cannot circumvent this bedrock constitutional provision by resorting to the circular logic that by conceding the legality of the government's action in order to maintain a takings claim, plaintiffs must also concede that the government was correct in all of its determinations, including whether the chickens and eggs were diseased and the appropriate amount of compensation. To accept such a proposition would destroy the constitutional check on the government's exercise of power over private property rights. Thus, the court denies defendant's motion regarding plaintiffs' fourth cause of action.

Furthermore, in a takings context, the issue of whether the flock and eggs were diseased relates more to a nuisance defense rather than to the sufficiency of the pleadings. See 5C Wright

& Miller, supra, § 1368 ("A material issue of fact that will prevent a motion under Rule 12(c) from being successful may . . . result from the defendant pleading new matter and affirmative defenses in his answer."). The court notes, however, that defendant failed to assert a nuisance defense in its answer. Normally, the court would prefer that defendant amend its answer. See Cooke v. United States, 79 Fed. Cl. 741, 742-43 (2007) (granting defendant's motion to amend its answer and raise affirmative defenses upon a finding that doing in that case "would not cause unfair surprise or unreasonably broaden the issues"). Because the court is permitting plaintiffs to file an amended complaint, defendant can make the determination concerning the appropriate affirmative defenses when it files its answer to the amended complaint.

## III. PLAINTIFFS' PROFFERED EXHIBITS

As noted in footnote 2, supra, plaintiffs submitted extensive exhibits with their cross-motion to amend and opposition, but indicated that they did not seek to convert defendant's motion into one for summary judgment. Instead, plaintiffs stated: "If the Court seeks to convert this matter into a [m]otion for summary judgment, Plaintiff[s] seek[] the opportunity to complete discovery and to submit additional information and supplement the record." Pls.' Cross-Mot. & Opp'n 11. The parties submitted a joint status report in which they indicated that discovery, which has been ongoing since defendant filed the instant motion, has been completed.[4] Given the current procedural posture of this case, the court declines to consider the numerous exhibits plaintiffs proffered in their cross-motion to amend and opposition. Consideration of these materials would convert defendant's motion into one for summary judgment, which would require supplemental briefing. Since discovery has concluded, the parties are better positioned now to proceed with summary judgment briefing rather than resorting to supplemental briefing prior to the court's ruling upon the instant motion.

## IV. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings is **GRANTED IN PART and DENIED IN PART**. Furthermore, plaintiffs' cross-motion to amend their complaint is **GRANTED**. The parties shall adhere to the following deadlines:

1. Plaintiffs shall file an amended complaint **by no later than Friday, August 29, 2008**.

2. Defendant shall respond to plaintiffs' amended complaint within the time frame contemplated by the rules of the court.

3. The parties shall file, **by no later than Friday, October 31, 2008**, a joint status report

---

[4] Plaintiffs noted, however, that a discovery dispute concerning defendant's answers to plaintiffs' interrogatories has developed. As such, they indicated the possibility of filing a motion to compel if a resolution is not reached. See J. Status Report 1, Aug. 6, 2008.

indicating whether they have resolved their discovery dispute and proposing further proceedings in this case.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge